LIKENS and others, Appellants, vs. LIKENS and others,
Respondents.

*September 9—September 29, 1908.*

*Equity: Action to establish title to land: Laches.*

1. The defense of laches does not depend upon any statute of limi-
tation, but is in the nature of an equitable estoppel barring
the right to maintain an action by those who unduly slumber
upon their rights. '

2. There is no fixed rule as to the lapse of time necessary to bar a
suitor in equity. Great lapse of time, if reasonably excused
and without damage to the defendant, has been ignored; while
slight delay, accompanied by circumstances of negligence, ap-
parent acquiescence, or change of defendant's position, has been
held sufficient.

3. After foreclosure of a mortgage given by the widow and heirs
of an intestate, two of the heirs (defendants herein) bought the
land for themselves from the purchaser at the foreclosure sale,
and thereafter held it as their own, to the knowledge of all per-
sons interested. After such purchase defendants mortgaged the
land and appropriated to their own use the rents, issues, and
profits thereof. A third heir, who knew of the purchase and
that defendants claimed title adverse to him, acquiesced there-
in, and during the period of more than nine years until his
death made no claim against them. After his death, and more
than ten years after the purchase by defendants, the widow and
heirs of said third heir brought this action to establish title
to a share in the land and for an accounting, etc. During said
ten years the land had increased in value four or five fold. No
sufficient excuse for the delay was shown. *Held*, that the ac-
tion was barred by laches.

APPEAL from a judgment of the circuit court for Grant
county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed.*

This action was brought to establish the title of the plaintiffs to certain lands in Grant county, Wisconsin, and for an accounting and partition. The answer, among other defenses, sets up laches and alleges ownership and possession from the 18th day of April, 1896, and that such possession had been continuous, open, notorious, and exclusive of all rights, claims, or title of any person, and hostile to the claim of the plaintiffs and W. W. Likens, the person under whom plaintiffs claim. The findings made and filed by the court below give a history of the material facts.

The court found substantially that on November 17, 1889, James Likens died intestate, leaving him surviving Artella Likens, his widow, and the following children: W. W. Likens, James Likens, *Benjamin F. Likens, Sarah Jane Arnett, Josephine McGinnis, Emma I. Dilger,* and *Tilla A. Likens;* that his son *Benjamin F. Likens* was appointed administrator in March, 1900, by the county court of Grant county, Wisconsin; that said administrator never filed a report and that the estate has never been settled; that said James Likens died seised of 232 acres of land in Grant county, upon which was an outstanding mortgage to James Miles of $250, dated February 28, 1880; that in 1891 a large barn was built on said premises at a cost of over $1,600; that said barn was built largely under direction and request of W. W. Likens, who promised to furnish the money to pay for the same, and, said barn not being paid for, liens were filed thereon in 1902 on a portion of said land in favor of William H. Schmitz for $249 and Kendrick & Wallenhorst for $709.65; that an action was brought to foreclose the lien of Kendrick & Wallenhorst in 1892, and in September of said year the widow and then surviving heirs of James Likens executed a mortgage to T. L. Cleary for the sum of $1,100 to pay said liens; that said mortgage was duly recorded, and covered all the land of which deceased died seised and the following additional land of *Benjamin F. Likens:* the S. E. ¼ of N. W. ¼ of section

17, and the S. W. ¼ of the S. W. ¼ of section 17, all in township 3, range 2 W.; that said mortgage was signed by Artella Likens (widow), *Benjamin F. Likens, Sarah Jane Arnett,* W. W. Likens, *Josephine McGinnis, Emma I. Dilger,* and *Tilla A. Likens;* that James Likens, Jr., died in 1890, leaving him surviving a widow and three minor children, who did not join in said mortgage; that the proceeds of the mortgage to Cleary were used to pay the indebtedness on the barn built upon the lands of the deceased. The court further found that in 1894 said Cleary mortgage, having been duly assigned to C. H. Eighmy, was foreclosed, and judgment docketed thereon November 14, 1894, and thereafter the lands were sold by the sheriff in accordance with said foreclosure on March 6, 1896, to John F. Miles for $1,551, and a deed to said lands made by the sheriff to said Miles and duly recorded; that the land in question at a forced sale was not worth more than it was bid in for by said Miles; that the defendants *Benjamin F. Likens* and *Tilla A. Likens* did all they could preliminary to the foreclosure sale to induce others interested in said lands to come in and help them pay off the mortgage and save the land; that they failed in their endeavor, and all the parties interested knew that the land was to be sold and disposed of at a foreclosure sale; that John F. Miles bought the land for himself, but through his friendship for *Benjamin F. Likens* and *Tilla A. Likens* proposed to quitclaim it to them and take a mortgage back for the balance of the purchase money that they were unable to pay; that this transaction was in good faith, and *Benjamin F. Likens* and *Tilla A. Likens* on April 18, 1896, bought all the land described in said mortgage of John F. Miles for themselves, and have ever since April 18, 1896, held it as their own under said deed and to the knowledge of every one interested in the land prior to the foreclosure sale. The court further found that W. W. Likens was a son of James Likens, deceased, and said W. W. Likens died in September,

1905, and that the plaintiffs are his widow and heirs, and that plaintiffs in this action, at the time of the death of W. W. Likens and ever since, have been nonresidents of the state of Wisconsin; that W. W. Likens, soon after said Miles deeded said lands to *Benjamin* and *Tilla Likens,* knew that they were the owners and claimed title thereto adverse to him, and never at any time during the nine remaining years of his life questioned their title as absolute owners of this land; that W. W. Likens was a lawyer, had practiced over thirty years, but did not reside with plaintiff, his widow, for more than twenty years before his death; that during the last four years of his life he was an invalid and was taken care of by *Benjamin F. Likens* and *Tilla A. Likens,* and that reasonable compensation for his board and attendance given him at that time would be $1,000; that none of the defendants in this action ever appeared or answered except *Benjamin F. Likens* and *Tilla A. Likens,* and none of the other defendants has ever made any claim to an interest in these lands described in the complaint since March 6, 1896; that John F. Miles on April 18, 1896, made a quitclaim deed to *Benjamin F. Likens* and *Tilla A. Likens* of the lands described therein, and said deed was duly recorded; that said deed conveyed all the lands deeded to him in said sheriff's deed except the S. E. ¼ of the N. W. ¼ of section 16, township 3, range 2 W.; that the said lands had been purchased by said Miles on March 6, 1896; that the heirs of James Likens, Sr., had no title or interest in and to the lands of which he died seised (excepting the heirs of James Likens, Jr., deceased) from March 6, 1896, to April 18, 1896, when said lands were purchased from said Miles by *Benjamin F. Likens* and *Tilla A. Likens;* that the time for redemption under the Eighmy mortgage expired November 14, 1895; that the defendants *Benjamin F. Likens* and *Tilla A. Likens* fully informed the other heirs of James Likens, deceased, of all the facts as they occurred, and informed them that they were unable to redeem said lands from said foreclosure sale,

and endeavored to secure the assistance of the heirs in rais-
ing money to do so; that thereupon all the other heirs of
James Likens, deceased, abandoned all effort on their part
to redeem said lands or repurchase the same, and *Benjamin
F. Likens* and *Tilla A. Likens* informed all the heirs that
they were going to try and buy back the land in their own
names and for their own benefit, and that all of the heirs ac-
quiesced in this arrangement, and one of them, W. W. Lik-
ens, in a letter soon after the purchase, stated that he was
glad to know they had bought the land in their own names;
that at the time of the purchase from said Miles by *Ben-
jamin F. Likens* and *Tilla A. Likens* the other heirs of
James Likens, Sr., who signed the mortgage had no interest
whatever in said lands and had lost the same by the foreclo-
sure proceedings, and *Benjamin F. Likens* and *Tilla A. Lik-
ens* purchased said lands from Miles for their own sole use
and benefit, as the heirs of James Likens, Sr., well knew;
that during the last ten years the lands in controversy have
greatly increased in value and are now worth four or five
times what they were at the time of purchase by defendants;
that if the plaintiffs, or their ancestor from whom they claim
title, W. W. Likens, ever had any claim, there had been un-
reasonable delay on his part in claiming or establishing his
claim to said lands.

As conclusions of law the court found that the plaintiffs
have established no cause of action and the complaint should
be and is dismissed upon the merits, and the defendants *Ben-
jamin F. Likens* and *Tilla A. Likens* recover their costs of
the plaintiffs in this action.    Judgment was so ordered and
entered upon the findings of fact and conclusions of law, dis-
missing the complaint and for costs, from which judgment
this appeal was taken.

For the appellants there was a brief by *Bushnell, Watkins
& Moses,* and oral argument by *A. R. Bushnell* and *R. A.
Watkins.*

*T. L. Cleary* and *E. M. Lowry,* for the respondents.

KERWIN, J.   It is strenuously contended by appellants that the sale to Miles under the foreclosure suit and transfer of the land by him to *Benjamin F. Likens* and *Tilla A. Likens* (hereinafter called defendants) did not vest the absolute title in said defendants as against W. W. Likens, under the doctrine that a cotenant cannot purchase an outstanding title or incumbrance affecting the common estate for his own exclusive benefit and assert such right against other cotenants.   We do not regard it necessary to discuss this question, because we are convinced that the defense of laches is supported by the findings and evidence, and therefore the judgment must be affirmed on that ground regardless of other questions discussed by counsel.   The court found upon sufficient evidence that on March 6, 1896, Miles bought the property in question at foreclosure sale and recorded his deed, and on April 18, 1896, defendants bought from Miles and ever since have held the land as their own under the deed from Miles, to the knowledge of all parties interested; that soon after the sale to defendants W. W. Likens knew defendants were the owners and claimed title adverse to him and never afterwards denied that they were the owners; that during the ten years immediately preceding the commencement of this action the lands greatly increased in value, and were at the time of commencement of this action worth four or five times what they were when purchased by defendants. It further appears from the record that in August, 1895, W. W. Likens wrote to defendant *Tilla A. Likens,* saying that he was not expecting to realize anything from the property, and afterwards and on May 24, 1896, again wrote saying he was pleased that she and *Benjamin* had the property in their own names; that after the purchase from Miles the defendants mortgaged the land and took the rents, profits, and issues thereof and converted the same to their own use; that this action was commenced August 10, 1906.   It therefore appears that for more than nine years after the purchase

from Miles and up to the time of his death W. W. Likens took no steps to assert his claim against the defendants, if he had any, and the present action was not commenced for more than ten years after defendants purchased the land, and no sufficient excuse was shown to excuse the delay. We think it clear, therefore, that upon the findings and evidence the defense of laches was established. *Rogers v. Van Nortwick,* 87 Wis. 414, 58 N. W. 757; *McCann v. Welch,* 106 Wis. 142, 81 N. W. 996; *Fleming v. Ellison,* 124 Wis. 36, 102 N. W. 398.

The defense of laches does not depend upon any statute of limitation, but is in the nature of an equitable estoppel, and operates as a bar upon the right to maintain an action by those who unduly slumber upon their rights. There is no fixed rule as to the lapse of time necessary to bar a suitor in a court of equity. Each case must stand upon its own particular facts. Great lapse of time, if reasonably excused and without damage to the defendant, has been ignored; while slight delay, accompanied by circumstances of negligence, apparent acquiescence, or change of defendant's position, has been held sufficient. *McCann v. Welch, supra; Hammond v. Hopkins,* 143 U. S. 224, 12 Sup. Ct. 418. And it has been held that unreasonable delay in bringing an action in equity will bar recovery where the other party has made improvements in the meantime or the property has greatly increased in value. *Combs v. Scott,* 76 Wis. 662, 45 N. W. 532; *Johns v. Norris,* 22 N. J. Eq. 102. In the case before us there was unreasonable delay in bringing the action and no sufficient excuse for such delay shown; also acquiescence in the title and claim of defendants, besides a four or five fold increase in the value of the property during the delay. Under such circumstances equity will not grant relief. In addition to the cases before cited we call attention to the following: *Brittin v. Handy,* 20 Ark. 381; *Mandeville v. Solomon,* 39 Cal. 125; *Buchanan v. King's Heirs,* 22 Grat.

414.    In the cases last cited it was held that where a tenant in common buys in an outstanding title, if his cotenant desires to avail himself of the benefit of the purchase he must act promptly and make his election to claim the benefit of the purchase and contribute to the expense incurred in the purchase.

It follows that the judgment dismissing the complaint was right and must be affirmed.

*By the Court.*—The judgment of the court below is affirmed.