Thomas M. WARD, Jr., Respondent,†

v.

FRITO-LAY, INC., a foreign corporation, Appellant.

Court of Appeals

*No. 78–565. Submitted on briefs September 25, 1979.
—Decided January 28, 1980.*
(Also reported in 290 N.W.2d 536.)

† Petition to review denied.

For the appellant the cause was submitted on the joint briefs of *Ward I. Richter* and *Bell, Metzner & Seibold, S.C.,* of Madison, and *Duane C. Aldrich* and *Thomas H. Christopher* and *Kilpatrick, Cody, Rogers, McClatchey & Regenstein,* of Atlanta, Georgia, attorneys, and *Robert A. Fredrickson* and *Reno, Zahm, Folgate, Skolrood, Lindberg & Powell,* of Rockford, Illinois, of counsel.

For the respondent the cause was submitted on the joint brief of *J. Richard Long* and *William T. Henderson* of Beloit.

Before Donlin, P.J., Foley, J., and Dean, J.

FOLEY, J. Frito-Lay appeals from a judgment awarding actual and punitive damages to Ward for his allegedly wrongful discharge from employment. Ward's discharge resulted from his relationship with another Frito-Lay employee. Because we conclude that Ward has failed to prove his cause of action for wrongful dis-

charge, we reverse the judgment and remand the matter to the trial court with directions to dismiss the complaint.

Ward did not have an employment contract with Frito-Lay and, traditionally, in the absence of a specific contractually set term, an employer could discharge an employee at any time and for any or even no cause. Annot., 62 A.L.R.3d 271 (1975) ; 56 C.J.S. *Master and Servant* §48 (1948) ; *Goff v. Massachusetts Protective Ass'n, Inc.*, 46 Wis.2d 712, 176 N.W.2d 576 (1970) ; *Forrer v. Sears, Roebuck & Co.*, 36 Wis.2d 388, 153 N.W.2d 587 (1967). The general rule has been modified in other jurisdictions to permit recovery where the discharge violates some clear and specific public policy or where the discharge is retaliatory or is motivated by bad faith or malice. Ward asks this court to adopt this modification in this case.

The public policy exception was first acknowledged in *Petermann v. International Brotherhood of Teamsters, Local 396,* 174 Cal. App.2d 184, 344 P.2d 25 (1959). Petermann was discharged for refusing his employer's direction to commit perjury before a legislative committee. The court concluded that because perjury was a crime, asking an employee to commit perjury violated public policy. The court balanced this public policy against the unlimited right of an employer to discharge an employee at will and held that a cause of action should be recognized to discourage violation of the public policy. The court defined public policy as those principles that require restrictions on private contractual dealings for the good of the community. The court stated that any action that contravened good morals or established interests of society violated public policy.

The Indiana Supreme Court has also allowed an action for wrongful discharge. In *Frampton v. Central Indiana Gas Company,* 260 Ind. 249, 297 N.E.2d 425 (1973), the

court ruled that an employer could not discharge an employee for filing a worker's compensation claim. The court stated that the worker's compensation laws embraced a fundamental, well-defined and well-established public policy. Strict employer adherence was required to effect that policy. The court said, "when an employee is discharged solely for exercising a statutorily conferred right an exception to the general rule must be recognized." *Frampton, supra,* at 253, 297 N.E.2d at 528.

In *Nees v. Hocks,* 272 Or. 210, 536 P.2d 512 (1975), the Oregon Supreme Court held that a cause of action existed on behalf of an employee discharged because he served jury duty. The court reasoned that because juries are fundamental to our system of justice, we should encourage service on juries. An employer should not be allowed to discharge an employee for serving on a jury.

Other cases in which courts have allowed a cause of action for wrongful discharge include: *Stewart v. Travelers Corporation,* 503 F.2d 108 (9th Cir. 1974), where an employee was discharged because his wages had been garnished, and such a discharge was forbidden by statute; *Glenn v. Clearman's Golden Cock Inn, Inc.,* 192 Cal. App.2d 793, 13 Cal. Rptr. 769 (1961), where an employee was discharged for participating in union activities; *Montalvo v. Zamora,* 7 Cal. App.3d 69, 86 Cal. Rptr. 401 (1970), where an employee was discharged for hiring an attorney to represent him in negotiations; *Pierce v. Ortho Pharmaceutical Corporation,* 166 N.J. Super. 335, 399 A.2d 1023 (1979), where an employee was discharged for refusing to help market a drug she believed to be hazardous.[1]

---

[1] Other courts have also acknowledged the existence of a cause of action, but have refused to find one under the facts presented to them. *See Jackson v. Minidoka Irrig. Dist.,* 98 Idaho 330, 563 P.2d 54 (1977); *Campbell v. Ford Indus., Inc.,* 274 Or. 243, 546 P.2d 141 (1976); *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974).

The reasoning of the cases recognizing a cause of action for wrongful discharge persuades us that it is not in the public interest for courts to uniformly honor private contractual rights when to do so would contravene public policy. The facts of this case, however, do not prove a wrongful discharge in violation of public policy. Ward was fired because his relationship with a fellow employee, Judy Johnson, was causing dissension at the Frito-Lay plant. Ward and Johnson, although not married, were living together at the time, and Johnson had tried to bid onto the same shift as Ward. Frito-Lay had a rule against relatives working on the same shift, and their relationship had caused employee comment, insubordination, and the filing of a grievance.[2] Frito-Lay felt that both Ward and Johnson could not continue to work at the plant. Ward was fired because of this and not because he was attempting to exercise some statutorily or constitutionally guaranteed right or perform some public duty. Frito-Lay made a business judgment, and the court should not second-guess that judgment absent a clearly defined and well-established public policy.

Ward asserts that sec. 111.01, Stats., creates a public policy in Wisconsin in favor of peaceful labor relations, to be achieved by balancing the rights of the employer, employee, and the public. This statement of policy applies to the Employment Peace Act and does not create a substantive right for an employee. *See Ross v. Ebert,* 275 Wis. 523, 82 N.W.2d 315 (1957).

Ward also contends that sec. 134.03, Stats., creates the kind of policy needed for this action. Section 134.03 prohibits the use of threats, intimidation, force, or coercion to keep a person from engaging in lawful work. There is

---

[2] Ward had a previous relationship with another female Frito-Lay employee. At that time, the woman's husband came to the plant armed with a gun, threatened Ward, and management had to call in the police.

no evidence that Frito-Lay used tactics of this sort. To read the statute as Ward would have us read it would abolish the employment-at-will doctrine. The Wisconsin Supreme Court has refused to do so. *Goff, supra; Forrer, supra.* Finally, Ward contends that sec. 134.01 applies in this case. That statute requires a malicious conspiracy, and there is no evidence of either conspiracy or malice.

The other exception to the general rule that employment-at-will can be terminated at any time by either party was carved out by the New Hampshire Supreme Court in *Monge v. Beebe Rubber Company,* 114 N.H. 130, 316 A.2d 549 (1974). In *Monge,* the court concluded that an employer had a contractual duty to act in a good faith manner toward an employee. When an employer acts in bad faith or out of malice, he breaches his contract with the employee, and the employee has a cause of action. The employee in *Monge* was discharged because she refused the advances of her foreman. The court held that a discharge for that reason was actionable. The court allowed damages for wages lost due to the discharge but, because this was a contract action, denied recovery for mental suffering.

*Monge* does make reference to an underlying policy of affording employee stability in employment. The court concluded that bad faith discharges were not in the public interest. Even without this underlying policy reason, *Monge* is distinguishable because Ward has not shown that Frito-Lay acted in bad faith. In fact, Frito-Lay kept Ward on the payroll for several months after his discharge so his pension would vest. They gave him a good job reference and agreed to pay his unemployment. Initially, Ward and Johnson were even given the choice of which of them should leave Frito-Lay. These facts do not give rise to a cause of action for retaliatory, bad faith or malicious discharge.

*By the Court.*—Judgment reversed and remanded.