Sharon BROWN, Plaintiff,

v.

PICK 'N SAVE FOOD STORES, Defendant.

No. 00–C–148.

United States District Court, E.D. Wisconsin.

April 24, 2001.

---

**1136**

Sharon Brown, pro se.

Lisa Bergerson, for Defendant.

### *DECISION AND ORDER*

ADELMAN, District Judge.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Sharon Brown brings this pro se action against her former employer, B & H Gold Corporation d/b/a Gold's Pick 'N Save, alleging that defendant discriminated against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12117, and violated state law by wrongfully discharging her in retaliation for filing a worker's compensation claim. The court has jurisdiction of the ADA claim pursuant to 28 U.S.C. §§ 1331 and 1343 and of the state law claim under 28 U.S.C. § 1367(a).

Plaintiff was employed by defendant as a cashier clerk for nine years. In 1998 while at work, she fell and injured her knee and ankle and subsequently filed a worker's compensation claim after which defendant terminated her. Plaintiff alleg-es that during the course of her employment defendant violated the ADA by treating her unfairly because she has a learning disability and suffers from mental retardation and clinical depression. Plaintiff also alleges that defendant wrongfully fired her because she filed for worker's compensation. Defendant filed an answer to the complaint and now moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

## II. STANDARD OF REVIEW

Under Rule 12(c), a party may move for judgment on the pleadings. *See* Fed.R.Civ.P. 12(c). "Like Rule 12(b) motions, courts grant a Rule 12(c) motion only if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'". *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 452 (7th Cir.1998) (quoting *Craigs, Inc. v. Gen. Elec. Capital Corp.,* 12 F.3d 686, 688 (7th Cir.1993)). Thus, to succeed, the moving party must demonstrate that there are no material issues of fact to be resolved. *Id.* The facts are viewed in the light most favorable to the nonmoving party, but facts set forth in the complaint that undermine the plaintiff's claim are not ignored. *Id.* The pleadings referenced in Rule 12(c) include the complaint, the answer, and any written instruments attached as exhibits. *Id.* at 452–53. "Written instruments" include documents such as affidavits, letters, contracts, and loan documentation. *Id.* at 453.

The motion challenges the sufficiency of the complaint to state a claim upon which relief may be granted. Judgment is warranted if the plaintiff can prove no set of facts in support of her claims that would entitle her to relief. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir.1997). The

essence of the motion is not that the plaintiff has pleaded insufficient facts, it is that even assuming all of her facts are accurate, she has no legal claim. *Payton v. Rush–Presbyterian–St. Luke's Med. Ctr.,* 184 F.3d 623, 627 (7th Cir.1999). Complaints by pro se plaintiffs are to be liberally construed. *Wilson v. Civil Town of Clayton,* 839 F.2d 375, 378 (7th Cir.1988).

## III. DISABILITY DISCRIMINATION CLAIM

█ Defendant argues that it should be granted judgment on plaintiff's ADA claim because the administrative complaint she filed with the Wisconsin Equal Rights Division ("ERD") prior to commencing the present suit did not include her disability discrimination claim. Before bringing an ADA suit a plaintiff must first file a charge of disability discrimination before the appropriate federal or state administrative agency. 42 U.S.C. § 12117(a); *Luna v. Walgreens,* 888 F.Supp. 87, 88 (N.D.Ill. 1995). Additionally, the scope of subsequent judicial proceedings is limited by what is claimed in the charge filed with the agency. *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110 (7th Cir.1992).

Defendant does not dispute that plaintiff filed a complaint before the appropriate state agency, the ERD. However, defendant asserts that plaintiff's ERD complaint did not include a disability discrimination charge, and that plaintiff confirmed at a hearing before a state administrative law judge that she was not pursuing such a charge. Plaintiff disputes this and states that her ERD filing included a statement that defendant discriminated against her based on her disability.

█ In support of its motion defendant submits an affidavit and a transcript of the ERD hearing. Plaintiff also submits an affidavit containing her version of what happened before the ERD. However, none of the parties' submissions relating to the ERD proceedings were attached to their pleadings. On a motion for judgment on the pleadings, I may generally only consider materials attached to the pleadings. *N. Ind. Gun & Outdoor Shows, Inc.,* 163 F.3d at 452–53.[1] Therefore, at this point, I will not address what effect the administrative proceedings may have on the plaintiff's right to pursue her disability discrimination claim.

Plaintiff's complaint in the present case sets forth facts in support of a violation of the ADA, albeit in the most general terms. Therefore, defendant's motion to dismiss the ADA claim will be denied.

## IV. RETALIATORY DISCHARGE CLAIM

█ Defendant also seeks judgment on the pleadings with respect to plaintiff's retaliatory discharge claim. I assess the merits of defendant's motion under the Rule 12(c) standard of review previously stated. Plaintiff's retaliatory discharge claim is a state law claim, thus, I analyze defendant's motion under Wisconsin substantive law. My task is to predict how the Wisconsin Supreme Court would apply state law in this case. *Kaplan v. Pavalon & Gifford,* 12 F.3d 87, 89 (7th Cir.1993). Obviously, cases decided by the Wisconsin Supreme Court are the most persuasive evidence of how that court would resolve the legal issues presented here. *Id.* Intermediate appellate court decisions are helpful but not binding or dis-

---

1. Factual allegations contained in court filings of a pro se plaintiff other than the complaint and its attachments may be considered when evaluating the sufficiency of a complaint if they are consistent with the allegations of the complaint. *Gutierrez v. Peters,* 111 F.3d 1364, 1367 n. 2 (7th Cir.1997).

positive regarding what the Wisconsin Supreme Court would do in a similar case. *Id.* Absent guidance from Wisconsin courts I may look to other jurisdictions to predict how the Supreme Court of Wisconsin would decide the issue. *King v. Damiron Corp.*, 113 F.3d 93, 95 (7th Cir.1997).

Plaintiff's retaliatory discharge claim raises several interrelated questions. Broadly speaking, these questions are whether Wisconsin law permits an employer to fire an employee for filing a worker's compensation claim and, if not, what remedy, if any, is available to the terminated employee. I address these questions below.

## A. Wrongfulness of Discharge

 Almost twenty years ago in *Brockmeyer v. Dun & Bradstreet*, 113 Wis.2d 561, 567, 335 N.W.2d 834 (1983), the Supreme Court of Wisconsin recognized a common-law exception to the doctrine of employment at will. Under the employment-at-will doctrine, where employment is for an indefinite term, an employer may discharge an employee "for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of legal wrong." *Id.* (internal quotation marks omitted). However, the court noted that there were exceptions to the employment-at-will doctrine. First, the court stated that both Congress and the Wisconsin legislature had enacted statutes designed to curb harsh applications and abuse of the doctrine. *Id.* These statutes prohibited basing employment decisions on such factors as race, color, religion, sex, national origin, age, handicap, marital status, ancestry, sexual orientation, arrest or conviction record, union activities, jury service, military service, wage garnishment,

refusal to submit to lie detector testing, testifying pursuant to subpoena, testifying at proceedings enforcing minimum wage laws, union protections, or occupational, safety, and health laws, or suffering a compensable worker's compensation illness or injury. *Id.* at 567–68 & n. 9, 335 N.W.2d 834.

Second, the court observed that courts in other jurisdictions had created a narrow public policy exception to protect certain wrongfully discharged employees not protected by such statutory prohibitions. *Id.* at 569, 335 N.W.2d 834. The court then adopted a narrow public policy exception for Wisconsin, and held that "an employee has a cause of action for wrongful discharge when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law." *Id.* at 573, 335 N.W.2d 834.

 In the present case plaintiff alleges that defendant fired her for filing a worker's compensation claim subsequent to a workplace injury.[2] Such conduct, if true, would violate Wis. Stat. § 102.35(2). Section 102.35(2) prohibits an employer from "without reasonable cause, refus[ing] to rehire an employe injured in the course of employment, or ... because of a claim or attempt to claim [worker's] compensation benefits from such employer, discriminat[ing] or threaten[ing] to discriminate against an employe as to the employe's employment." An employer who violates the statute "shall forfeit to the state not less than $50 nor more than $500 for each offense." *Id.* Section 102.35(2) is thus a statutory modification of the employment-at-will doctrine and makes it illegal for employers to fire their workers in retalia-

---

**2.** Defendant denies this allegation and states that plaintiff was fired for poor performance and for being verbally abusive. As stated

above, however, on a motion under Rule 12(c) I must view the facts in the light most favorable to plaintiff.

tion for filing worker's compensation claims.

## B. Remedy

Plaintiff, therefore, has adequately alleged that defendant illegally discharged her. The next question is therefore what remedy, if any, is available. Defendant argues that under Wisconsin law such retaliatory discharge actions are barred either by the exclusive remedy provision of the worker's compensation law, or by the forfeiture provision in § 102.35(2).[3] I now turn to these issues.

### 1. Exclusive Remedy Under Worker's Compensation

The worker's compensation act strikes a balance between the interests of employers and employees. Injured workers are guaranteed prompt relief regardless of fault, but in exchange employers are granted immunity from tort actions. *Bauernfeind v. Zell,* 190 Wis.2d 701, 713, 528 N.W.2d 1 (1995). The exclusive remedy provision states that where the conditions for liability under the worker's compensation act exist, "the right to recovery of compensation under this chapter [the worker's compensation act] shall be the exclusive remedy against the employer." Wis. Stat. § 102.03(2).

 In order for the exclusivity provision to apply, two requirements must be met: (1) the "conditions of liability" in § 102.03(1) must exist, and (2) there must be a right to recovery of compensation under the worker's compensation law.

*County of La Crosse v. Wis. Employment Relations Comm'n,* 182 Wis.2d 15, 34, 513 N.W.2d 579 (1994).

 Neither of these requirements is met here. One condition of liability under § 102.03(1) is that the employee must sustain an "injury." This term is defined in § 102.01(2)(c) as "mental or physical harm to an employe caused by accident or disease." In *County of La Crosse,* 182 Wis.2d at 34, 513 N.W.2d 579, the Wisconsin Supreme Court held that the injury to a worker resulting from a termination or layoff in violation of a collective bargaining agreement was a second and separate injury from the worker's original on-the-job physical injury. Accordingly, the court held that injury as a necessary condition for recovery under the worker's compensation act did not exist, thus, the harm alleged by the plaintiff in an action seeking to arbitrate the legality of her termination under her union contract was not barred by the exclusive remedy provision. Similarly, the harm alleged by plaintiff in the present case relates solely to her allegedly wrongful discharge and not to her workplace injury. Thus, as in *County of La Crosse,* the wrongful discharge that plaintiff alleges is a second and separate harm from her knee and ankle injury.

The second prerequisite for the exclusive remedy provision of § 102.03(2) to apply, that the plaintiff must have a right to recover worker's compensation, is also absent. The only sanction provided under § 102.35(2) against an employer who ille-

---

**3.** Defendant assumes that Wis. Stat. § 102.35(3) governs this case and bases its exclusive remedy arguments, in part, on that statute. Section 102.35(3) prohibits an employer from unreasonably "refus[ing] to rehire an employee" who has suffered a workplace injury and allows the worker to recover up to one year's lost wages. However, § 102.35(3) plainly does not apply to this case, because plaintiff does not allege wrongful refusal to rehire. Rather, plaintiff alleges that defendant fired her in retaliation for filing a worker's compensation claim. Therefore, § 102.35(2) is applicable. I will assume, however, that defendant would make the same exclusive remedy arguments under § 102.35(2), and therefore address such arguments.

gally terminates a worker in retaliation for filing a worker's compensation claim is that the employer must pay a forfeiture to the state. Section 102.35(2) does not provide the terminated employee a right to any recovery, much less a right to receive worker's compensation payments.[4]

A third reason that worker's compensation exclusivity provision does not bar the present action is that Wisconsin considers retaliatory discharge actions based upon the public policy exception to be contract actions. *Brockmeyer*, 113 Wis.2d at 575–76, 335 N.W.2d 834. The exclusive remedy clause of the worker's compensation act preempts only tort actions, and does not bar actions for breach of contract. *County of La Crosse*, 182 Wis.2d at 31–32, 513 N.W.2d 579. For these three reasons, then, worker's compensation exclusivity does not bar the present action.

In support of its exclusive remedy argument under § 102.03(2), defendant cites *Cornejo v. Polycon Industries, Inc.*, 109 Wis.2d 649, 327 N.W.2d 183 (Ct.App. 1982), in which an employee brought a tort action against his employer for refusal to rehire because of a work-related injury. The state court of appeals dismissed the plaintiff's claim and held that § 102.35(3), which as previously noted allows recovery of up to one year's wages in such cases, provided the exclusive remedy for refusal to rehire. However, *Cornejo* does not govern the present case for several reasons. First, as discussed above, *County of La Crosse* established that the harm of a refusal to rehire is not a compensable injury under the worker's compensation statute, and thus the exclusive remedy provision of § 102.03(2) does not apply. *County of La Crosse* thus appears to have

overruled *Cornejo*'s holding that the worker's compensation exclusive remedy provision applies to discriminatory refusal to rehire under § 102.35(3). In the same way, the forfeiture provided under § 102.35(2) for retaliatory discharge is not subject to the exclusive remedy provision. Second, *Cornejo*'s holding appears in part to be based upon the decision's conflating the worker's compensation exclusive *remedy* provision in § 102.03(2) with language in § 102.35(3) providing that an employer who wrongfully refuses to rehire is exclusively *liable*. As the Wisconsin Supreme Court observed in *County of La Crosse*, "[t]he purpose of the 'exclusive liability' language in sec. 102.35(3) is not to bar law suits but rather to impose a penalty for an unreasonable refusal to hire *solely* on the employer, rather than on the insurance carrier." *County of La Crosse*, 182 Wis.2d at 36–37, 513 N.W.2d 579. Third, the plaintiff in *Cornejo* asserted a tort cause of action. Even if *Cornejo* remains good law following *County of La Crosse*, the latter decision holds that only tort actions are barred by the exclusive remedy provision of § 102.03(2), and as stated above, *Brockmeyer* makes clear that wrongful discharge actions under the public policy exception are actions in contract. *Brockmeyer*, 113 Wis.2d at 575–76, 335 N.W.2d 834. *Cornejo* thus does not assist defendants' claim that the exclusive remedy doctrine of § 102.03(2) bars plaintiff's suit.

## 2. Statutory Forfeiture under § 102.35(2)

Defendant next argues that because a forfeiture to the state is the only statutory sanction provided for violating § 102.35(2), plaintiff's wrongful discharge

---

4. In this respect § 102.35(2) differs from § 102.35(3), which allows an injured employee whose employer unreasonably refuses to rehire him or her due to a work-related injury a partial recovery of up to one year's lost wages.

suit is barred. In *Brockmeyer* the court stated that when the legislature created a statutory remedy for wrongful discharge, the statutory remedy was exclusive. 113 Wis.2d at 561 n. 17, 335 N.W.2d 834. Further, there is no indication in § 102.35(2) that the legislature intended to create a private right of action. The plain meaning of the statute is that only a forfeiture to the state is provided.

The legislative history tends to confirm that the legislature did not intend to create a private right of action. The statute was enacted in 1943 to forbid employers from discriminating against workers who made worker's compensation claims and subjected such employers to the same $50 to $500 forfeiture provision which is still in effect. Wis. Laws 1943 ch. 270, § 20 (codified as amended at Wis. Stat. § 102.35(2)). Eight years later, the legislature expanded the statute to include the present prohibition against employers' unreasonable refusal to rehire injured workers; violators were subject to the same forfeiture provisions as employers who discriminated against workers who filed compensation claims. Wis. Laws 1951 ch. 382, § 11 (amending Wis. Stat. § 102.35(2)). In 1975, the legislature created § 102.35(3) to provide injured workers whose employers unreasonably refused to rehire them with the current remedy of up to a year's wages (in addition to the possibility of a forfeiture to the state under § 102.35(2)). Wis. Laws 1975, ch. 147, § 27 (codified as amended at Wis. Stat. § 102.35(3)).[5] The legislature thus explicitly created a remedy of up to one year's wages for injured workers not rehired in violation of § 102.35(2), but no similar remedy for workers fired in retaliation for filing a compensation claim, even though such firings violate the same subsection of the law. It is thus reasonable to conclude that the legislature did not intend to authorize suits for wrongful retaliatory discharges in violation of § 102.35(2).

In this respect § 102.35(2) differs from the other statutory modifications to the employment-at-will doctrine discussed in *Brockmeyer.* The federal and state statutes discussed there, prohibiting discharges based upon such factors as race, religion, union activity, jury service and the like, all include mechanisms for injured employees to obtain relief. *See Brockmeyer,* 113 Wis.2d at 567–68 & nn.6–9, 335 N.W.2d 834 (gathering statutes). By contrast, as discussed above, § 102.35(2) makes it illegal for employers to discharge workers in retaliation for filing compensation claims, but neither that subsection nor § 102.35(3) provides a remedy by which the discharged workers may obtain meaningful compensation.

The Wisconsin Supreme Court recently addressed a somewhat similar situation in *Hausman v. St. Croix Care Center,* 214 Wis.2d 655, 571 N.W.2d 393 (1997). There, the plaintiffs, employees of a nursing home, were discharged for reporting that patients were being abused or neglected. The plaintiffs brought a wrongful discharge action, and the defendant moved to dismiss, arguing that the suit did not come within the public policy exception and that Wis. Stat. § 50.07, which imposed criminal penalties on nursing homes that fired employees for reporting abuse or neglect, provided the exclusive remedy for such discharges. The court permitted the action to proceed under the *Brockmeyer*

---

5. The only legislative history for the creation of this remedy is the Legislative Reference Bureau's analysis: "Employers who unreasonably refuse to rehire an injured employe may be assessed additional payments by the department to be paid to the employe, not exceeding one year's wages." Legis. Reference Bureau Drafting File for 1975 Wis. Law ch. 147, Analysis of Spec. Sess. S.B. 2, at 2 para. 9.

public policy exception. In reaching this conclusion the court relied upon the fact that the plaintiffs had an affirmative obligation under Wis. Stat. § 940.295(3) to prevent known or suspected abuse or neglect of nursing home patients, or else be subject to criminal prosecution themselves. *Hausman*, 214 Wis.2d at 667, 571 N.W.2d 393. The court also rejected the defendant's exclusive remedy argument, stating that the possibility that the defendant would be subject to criminal prosecution did not prevent the plaintiffs from bringing their action, because the existence of a criminal penalty was of no value to the plaintiffs. *Id.* at 670, 571 N.W.2d 393.

## C. Prediction of State Court Ruling

My task is to predict whether the Wisconsin Supreme Court would permit plaintiff's suit to proceed. There are several good reasons to make an affirmative prediction. First, if plaintiff's allegations are correct, then defendant acted illegally in firing her in retaliation for filing her worker's compensation claim, and it would be unjust for a worker fired in violation of the law to have no meaningful remedy. Second, *Hausman* supports plaintiff's argument that a civil remedy providing meaningful relief should be made available; the possibility that defendant might be forced to forfeit $50 to $500 to the state is of no benefit to her, just as the possibility in *Hausman* that the defendant nursing home might be subject to criminal penalties was of no benefit to the plaintiffs there. Third, the great majority of the states have either enacted a statutory cause of action for retaliatory discharges, or in the absence of meaningful statutory remedies, have recognized common law causes of action. 6 Arthur Larson & Lex

K. Larson, *Larson's Workers' Compensation Law* § 104.07[1] at 104–52 (2000) [hereinafter *Larson's Workers' Comp*]. Only a small and shrinking minority hold contra, *id.,*[6] and there is little reason to think that Wisconsin would join them; the Wisconsin Supreme Court explicitly looked to the holdings of numerous other jurisdictions last year in resolving two issues of first impression in employment law, *Strozinsky v. Sch. Dist. of Brown Deer*, 2000 WI 97, ¶¶ 53 & n. 14, 71 & n. 21, 237 Wis.2d 19, 49 & n. 14, 59–60 & n. 21, 614 N.W.2d 443 (2000).

Additionally there are compelling policy reasons to recognize such a right. First, worker's compensation laws are based upon a strong public policy that prompt relief should be available to injured workers. *Nigbor v. Dep't of Indus., Labor & Human Relations*, 120 Wis.2d 375, 382, 355 N.W.2d 532 (1984). If an employer can coerce employees into foregoing their rights to seek such relief, the employer can unilaterally destroy the function of the worker's compensation law and at the same time relieve itself of an obligation deliberately imposed on it by the legislature. 6 *Larson's Workers' Comp* § 104.07[1] at 104–53. The Wisconsin Supreme Court has recognized that public policy may prohibit employers from invoking their coercive economic powers to shift economic burdens to their employees. *Strozinsky*, ¶ 43, 237 Wis.2d at 45, 614 N.W.2d 443. Second, as stated in the leading case on the issue, "retaliatory discharge for filing a worker's compensation claim is a wrongful, unconscionable act and should be actionable in a court of law.... [W]hen an employee is discharged solely for exercising a statutorily conferred right

---

**6.** It appears that only two states, Georgia and Mississippi, neither provide a meaningful statutory remedy nor recognize a common law cause of action for wrongful retaliatory dis-

charge. *Evans v. Bibb Co.*, 178 Ga.App. 139, 342 S.E.2d 484 (1986); *Kelly v. Miss. Valley Gas Co.*, 397 So.2d 874 (Miss.1981).

an exception to the general rule [of employment at will] must be recognized." *Frampton v. Cent. Ind. Gas Co.*, 260 Ind. 249, 297 N.E.2d 425, 428 (1973). Finally, in the majority of states that provide a statutory remedy for retaliatory discharges—as Wisconsin has, through its forfeiture provision—the statutory remedy has been held not to be exclusive. 6 *Larson's Worker's Comp* § 104.07[2] at 104–57.

However, there are also reasons to be cautious before predicting that the Wisconsin Supreme Court would recognize that plaintiff has a cause of action. As discussed, in 1951 the Wisconsin legislature created forfeiture as the only remedy in this situation, and in 1975 it created a cause of action for a related kind of discrimination but not for this kind of discrimination. Second, as presently constituted, the judicially recognized Wisconsin at-will employment public policy exception is not broad enough to authorize plaintiff's suit. As originally established, the exception permitted wrongful discharge actions if the employee's termination was "contrary to a fundamental and well-defined public policy as evidenced by existing law." *Brockmeyer*, 113 Wis.2d at 572–73, 335 N.W.2d 834. Under this standard plaintiff's suit would be allowed to proceed. Section 102.35(2) evidences a fundamental

and well-defined public policy against worker's compensation retaliation. Subsequent to *Brockmeyer*, however, the Wisconsin Supreme Court narrowed the public policy exception to situations where the worker is terminated for refusing a command, instruction or request of the employer to violate public policy as established by existing law, *Bushko v. Miller Brewing Co.*, 134 Wis.2d 136, 142, 396 N.W.2d 167 (1986), although in *Hausman*, 214 Wis.2d at 668, 571 N.W.2d 393, the court slightly expanded the exception to include situations where a worker is terminated for complying with an affirmative legal obligation.[7]

However, plaintiff's claim is not within the scope of the *Brockmeyer* public policy exception as currently interpreted by the Wisconsin Supreme Court. Plaintiff does not allege that she was terminated for refusing a command, instruction or request of her employer to violate existing law, as required under *Bushko*, or because she complied with an affirmative legal obligation, as in *Hausman*. Plaintiff was not legally obliged to file her worker's compensation claim. Rather, she alleges that she was fired in retaliation for exercising her statutory right to file such a claim. This allegation does not entitle her to bring a

7. In *Wandry v. Bull's Eye Credit Union*, 129 Wis.2d 37, 384 N.W.2d 325 (1986), the Wisconsin Supreme Court held that there was a cause of action under *Brockmeyer*'s public policy exception, even though the worker was not ordered to violate the law, but instead simply asserted her statutory rights. The *Wandry* court held that *Brockmeyer* mandated this result because "[t]he discharge clearly violates the paramount requirements of the public interest and is based on the plaintiff-employee's conduct that is *consistent with* a clear and compelling public policy." *Id.* at 48, 384 N.W.2d 325 (emphasis added). Nonetheless, in the *Bushko* decision issued later in 1986, the court stated that, "*Brockmeyer* requires that the discharge be for refus-

ing a command *to violate* a public policy as established by a statutory or constitutional provision." *Bushko*, 134 Wis.2d at 141, 396 N.W.2d 167 (emphasis added).

*Bushko* and *Wandry* are thus at odds. According to *Wandry*, a worker has a cause of action if discharged for conduct *consistent with* a clear and compelling public policy, while *Bushko* states that a cause of action exists only if the employer requires the worker to *violate* public policy. Subsequent decisions have not clarified the tension between *Wandry* and *Bushko*. See, e.g., *Tatge v. Chambers & Owen, Inc.*, 219 Wis.2d 99, 113, 579 N.W.2d 217 (1998) (summarizing both decisions in a single paragraph without acknowledging inconsistency).

wrongful discharge action under the public policy exception as currently interpreted by the Wisconsin Supreme Court.

 It is quite possible that the Wisconsin Supreme Court would expand the public policy exception to allow a cause of action for retaliatory discharge in situations like plaintiff's. However, federal courts are to be circumspect in expanding the law of a state beyond the boundaries established in the jurisprudence of the state. *King*, 113 F.3d at 97; *see also Twin Disc, Inc. v. Big Bud Tractor, Inc.*, 772 F.2d 1329, 1333 (7th Cir.1985) ("Because we are unable to predict what the Wisconsin courts would do in such a case, and because of the substantial policy considerations involved, we hesitate to expand Wisconsin law to allow these tort claims in the absence of a more direct indication of intent by the state courts or legislature.").

At the present time neither § 102.35(2) nor Wisconsin case law authorizes employees who are terminated for filing worker's compensation claims to bring wrongful discharge actions against their employers. To permit plaintiff's claim to proceed, I would have to predict that the Wisconsin Supreme Court would expand existing law. While I might endorse such an expansion I do not believe that it is appropriate for me to predict it. Therefore, plaintiff's retaliatory discharge claim will be dismissed.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that defendant's motion for judgment on the pleadings is **GRANTED IN PART AND DISMISSED IN PART**.

**IT IS FURTHER ORDERED** that plaintiff's claim for retaliatory discharge is **DISMISSED**.